IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GENEVA LAURIE,

        Plaintiff,

v.                                         Case No. 16-759-DRH-RJD

WILLIAM M. BeDELL ACHIEVEMENT
RESOURCE CENTER and ROSJEAN
CUSTER,

        Defendants.

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I.    Introduction

Pending before the Court is defendant William M. BeDell Achievement and Resource Center's (hereinafter "the Center") motion to dismiss or alternatively to strike (Doc. 10). The Center contends that Counts III and IV of Laurie's complaint should be dismissed for failure to state a claim. The Center also moves to dismiss or strike the alleged common-law retaliation claim for reporting "on-the-job injuries" in Count V of the complaint. Laurie responded opposing the motion (Doc. 29), to which the Center replied (Doc. 30). For the reasons discussed below, the Center's' motion is **DENIED.**

### II.    Background

Plaintiff Geneva Laurie alleges that she was hired as an employee by the Center in August 2008. Thereafter, around August 2013, Program Director, Rosjean Custer, began making inappropriate age and health related comments

about Laurie (Doc. 1-1). On May 22, 2014, Laurie filed a written grievance with her employer in which she indicated that she felt harassed and discriminated by Ms. Custer because of her age (*Id.*). Thereafter, on May 23, 2014, Laurie was terminated due to "concerns over the safety of staff, failure to meet performance standards, [and] gross misbehavior and insubordination." (*Id.*).

Laurie later filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 10, 2014, in which she alleged that the Center violated provisions of the Age Discrimination in Employment Act ("ADEA"). (Doc. 29-1). The complaint was immediately cross-filed with the Illinois Department of Human Rights ("IDHR") according to the workshare agreement between the two agencies. (Doc. 1-1); *See* 775 Ill. Comp. Stat. Ann. § 5/7A-102(A-1) (West 2012); *Kaimowitz v. Bd. of Trustees of the Univ. of Ill.*, 951 F.2d 765 (7th Cir. 1991). On March 29, 2016, the EEOC issued its "right to sue" letter to Laurie notifying her that the EEOC was closing her case, and that she had the right to sue in federal or state court within 90 days of her receipt of the notice (Doc. 1-1, pg. 15).

According to Illinois Human Rights Act ("IHRA"), a complainant must "submit a copy of the EEOC's determination [to the IDHR] within 30 days after service of the determination by the EEOC on complainant." § 5/7A-102(A-1)(1). Laurie submitted the copy of EEOC's right to sue letter to the IDHR on May 19, 2016, 51 days after receiving it (Doc. 29-1). On that basis, the IDHR sent the parties an Investigation Report stating that they lack jurisdiction to hear the case

because Laurie did not timely file a copy of the EEOC's determination. On August 2, 2016, the IDHR issued a Notice of Dismissal for Lack of Jurisdiction to notify the parties that the case was dismissed, and if the complainant disagreed with this action, the complainant could "(a) seek review of this dismissal before the Illinois Human Rights Commission" or "(b) commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice." (Doc. 29-1).

Laurie subsequently filed an action arising from the same operative facts as the instant case on May 23, 2016, in the Circuit Court of Madison County, Illinois (Doc. 1-1). Plaintiff's initial complaint alleged six counts: Count I ADEA (discrimination); Count II ADEA (retaliation); Count III IHRA (discrimination); Count IV IHRA (retaliation); Count V Illinois Common Law Retaliation; and Count VI Complaint against Rosjean Custer.

On July 7, 2016, defendants removed this case to the United States District Court for the Southern District of Illinois asserting this Court has original jurisdiction on the basis of a federal question under 28 U.S.C. § 1331 (Doc. 1). Defendants, on July 14, 2016, moved to dismiss or strike plaintiff's complaint arguing that Counts III and IV of the complaint should be dismissed due to Laurie's failure to exhaust administrative remedies pursuant to the procedures enumerated by the IHRA (Doc. 10). Additionally, the Center claims that Laurie failed to state a claim for common law retaliatory discharge (Count V) for reporting "on-the-job injuries." (*Id.*). Plaintiff Laurie opposes the dismissal by

arguing that she has exhausted her administrative remedies under the IHRA for Counts III and IV and that she sufficiently pled the Illinois common law claim retaliation claim (Doc. 29)

### III.     Motion to Dismiss

Defendants' motion to dismiss is made pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6). A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7,* 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." In making this assessment, the district court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007).

Even though *Twombly* (and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint. "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008) (citations and quotations omitted).

The Seventh Circuit Court of Appeals offers further guidance on what a complaint must do to withstand dismissal for failure to state a claim. The Court in *Pugh v. Tribune Co.,* 521 F.3d 686, 699 (7th Cir. 2008) reiterated the premise: "surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the complaint's allegations must "raise a right to relief above the speculative level." A plaintiff's claim "must be plausible on its face," that is, "the complaint must establish a non-negligible probability that the claim is valid…" *Smith v. Medical Benefit Administrators Group, Inc.,* 639 F.3d 277, 281 (7th Cir.2011); See also *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir.2012) (Rule 12(b)(1) motion to dismiss for lack of standing).   With this standard in mind, the Court now turns to defendant's arguments for dismissal.[1]

### IV.   Analysis

**A. Count III: IHRA (Age Discrimination) and Count IV: IHRA (Retaliation)**

**1. Legal Standard**

The Illinois Human Rights Act ("IHRA") provides a state administrative remedy for human rights abuses such as discrimination based on age, race, religion, gender, or disability. 775 ILL. COMP. STAT. ANN. 5/1–101, *et seq.* In order to implement the goals of the statute, the IHRA established the Department of Human Rights ("IDHR") to investigate IHRA complaints and the Human Rights Commission ("IHRC") to adjudicate IHRA complaints*. Id.*; See also *Blount v.*

---

[1] The Court also considers Laurie's EEOC and IDHR charges and notice of right-to-sue attached to the complaint, along with additional facts and documents provided in Laurie's opposition to dismissal that are consistent with the pleadings. See *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

*Stroud,* N.E.2d 1, 6 (Ill. 2009). Before a complainant can file a discrimination case in court, the IHRA requires complainants to first file a complaint with either the EEOC or the IDHR 180 days after the alleged conduct took place. *See* § 5/7A-102(A-1) (2012); *Kaimowitz,* 951 F.2d at 765 (the IDHR and the EEOC have a workshare agreement where a complaint filed in one agency is considered to be immediately filed with the other). Once the EEOC conducts a preliminary investigation of the complaint, the agency will either pursue the case or terminate its proceedings. *Id.* If the EEOC decides to close the case, the EEOC will issue the complainant a "right to sue letter" that notifies the complainant of his or her right to file a lawsuit in court within 90 days. *Id.* However, after receiving the EEOC's right to sue letter, the complainant must send the IDHR a copy of the EEOC's letter so the IDHR can then issue its own report within 365 days, usually adopting the EEOC's determination. § 5/7A-102(G)(1). The IDHR's report will notify the complainant that he or she can either file a lawsuit within 90 days or file an appeal of the IDHR's determination with the IHRC. § 5/7A-102(A-1). Failure to follow this procedure constitutes a failure to exhaust administrative remedies.

"Requiring the exhaustion of administrative remedies allows the administrative agency to fully develop and consider the facts of the cause before it; it allows the agency to utilize its expertise; and it allows the aggrieved party to ultimately succeed before the agency, making judicial review unnecessary." *Arvia v. Madigan,* 209 Ill.2d 520, 531 (Ill. 2004). For these reasons, the IHRA traditionally had exclusive jurisdiction over state human rights claims. 775 ILL.

COMP. STAT. ANN. 5/8-111(D) (West 2008) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."); *Mein v. Masonite Corp.,* 485 N.E.2d 312, 315 (Ill. 1985). Judicial courts could only review the IHRC's final orders and the Commission's findings of fact must "be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." § 5/8-111(B)(2); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 458 (7th Cir. 1994). An IHRC final order is a ruling on the merits and determines "whether there is substantial evidence that the alleged civil rights violation has been committed." § 5/7A-102(D)(2); *Vroman v. Round Lake Area Sch.-Dist.*, No. 15 C 2013, 2015 WL 7273108 at *2 (N.D. Ill. Nov. 18, 2015) ("Because Plaintiff did not receive a final order [ruling on substantive evidence] from the IDHR as required under the IHRA, I am dismissing Plaintiff's IHRA claims without prejudice for failure to exhaust administrative remedies.")

However, many district courts believe that the 2008 Amendment to the IHRA now authorizes Illinois courts to assert original jurisdiction over IHRA claims. §§ 5/7A-102(C)(4), (D)(3); *See also Scott v. City of Kewanee*, No. 1:13–cv–01292–SLD, 2014 WL 1302025 at *4 (C.D. Ill. March 28, 2014) ("The City fails to acknowledge the 2008 IHRA amendment and the consensus of courts holding that the IHRA now permits federal courts to exercise original jurisdiction over IHRA claims in the absence of a final order from the IHRC."); *Goldberg v. Chicago Sch. for Piano Tech.,* No. 14 C 1440, 2015 WL 468792 at *3 (N.D. Ill. Feb. 3, 2015);

*De v. City of Chicago*, 912 F.Supp.2d 709, 731–32 (N.D. Ill. 2012) ("The Illinois legislature amended the Act in 2008 to give original jurisdiction over IHRA claims to the Illinois Human Rights Commission as well as the circuit courts of Illinois.

Although the Seventh Circuit has not addressed the issue of whether federal courts may exercise jurisdiction over claims brought pursuant to the IHRA, the overwhelming majority of district courts within this Circuit that have confronted the issue have concluded that federal courts do have subject matter jurisdiction over IHRA claims based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367.") (citing *Hoffman v. Bradley Univ.,* No. 11–1086, 2012 WL 4482173, at *1 (C.D. Ill. Sept. 27, 2012); *Massenberg v. A & R Sec. Servs., Inc.,* No. 10–CV–7187, 2011 WL 1792735, at *5 (N.D. Ill. May 11, 2011); *Lawrence v. E. Cent. Ill. Area Agency on Aging,* No. 10–CV–1240, 2011 WL 1044372, at *1 (C.D. Ill. Feb. 24, 2011); *Carr v. Avon Prods., Inc.,* No. 10–CV–3124, 2011 WL 43033, at *2 (N.D. Ill. Jan. 6, 2011); *Yucus v. Peoples Nat'l Bank,* No. 09–609–GPM, 2010 WL 1416140, at *2 (S.D. Ill. Apr. 1, 2010) ("[T]he language of the IHRA—as amended in January 2008—does not unequivocally confer *exclusive* jurisdiction upon Illinois State Courts .... this Court has power under 28 U.S.C. § 1367 to assume supplemental jurisdiction of plaintiff's [IHRA] claims."); *Glemser v. Sugar Creek Realty, Inc.,* No. 09–3321, 2010 WL 375166, at *2 (C.D. Ill. Jan. 26, 2010); *Clark v. Moline Pub. Library,* No. 09–4054, 2010 WL 331726, at *3 (C.D. Ill. Jan. 26, 2010)). Therefore, Illinois courts can hear IHRA claims without first obtaining a final order from the IHRC. But the complainant must still exhaust administrative

remedies according to the IHRA; meaning a complainant needs to file a charge with the IDHR and receive a determination. *Scott*, 2014 WL 1302025 at *5.

## 2. Analysis

Defendant is correct that receiving a right-to-sue letter from the EEOC is not sufficient to establish the exhaustion of administrative remedies pursuant to the IHRA. *See Wierciszewski v. Granite City Ill. Hosp. Co.,* No. 11–120–GPM, 2011 WL 1615191 at *3 (S.D. Ill. Apr. 28, 2011); *Hankins v. Best Buy Co., Inc.,* No. 10 CV 4508, 2011 WL 6016233 at *6 (N.D. Ill. Dec. 2, 2011); *Jimenez v. Thompson Steel Co., Inc.,* 264 F.Supp.2d 693, 695 (N.D. Ill. 2003). However, based on the above consensus, Laurie's failure to obtain a final order on the merits does not immediately bar her from filing suit in court. After the new amendment entered into force, Illinois courts have recognized supplemental jurisdiction over IHRA claims provided that the complainant shows that he or she filed a charge with the IDHR or EEOC and received an IDHR determination. Here, although Laurie sent her EEOC right-to-sue letter to the IDHR 21 days late, the IDHR issued Laurie a Notice of Dismissal stating that the Department lacked jurisdiction and the complainant had the right to sue in the appropriate circuit court within 90 days (Doc. 29-1). The IHRA statute provides that "[t]he notice of dismissal issued by the Director shall give the complainant notice of his or her right to seek review of the dismissal before the Human Rights Commission or commence a civil action in the appropriate circuit court. . . . If the complainant

chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice." § 5/7A–102(C)(4).

Therefore, the IHRA allows complainants to proceed in court after receiving a Notice of Dismissal. Indeed, district courts have upheld IHRA claims merely based on evidence of filing with the EEOC and IDHR and receiving a notice of dismissal. *See Goldberg*, 2015 WL 468792 at *3–4 (holding that plaintiff timely filed the lawsuit after receiving a Notice of Dismissal for lack of jurisdiction and properly stated an IHRA claim); *Engler v. Brown,* No. 3:11–cv–00997–DRH–DGW, 2012 WL 3150295 at *2 (S.D. Ill. Aug. 1, 2012) ("Despite defendant's arguments, plaintiff alleges and shows in her motion in opposition to defendant's motion to dismiss and attachments thereto that she did in fact first file this complaint with the Human Rights Commission and the United States Equal Employment Opportunity Commission. . . . Accordingly, defendant's motion to dismiss plaintiff's complaint based on failure to comply with administrative procedure is denied."); *Moultrie v. Penn Aluminum Intern, LLC*, No. 11–cv–500–DRH, 2012 WL 3113914 at *2–3 (S.D. Ill. July 31, 2012) (citing § 5/7A–102(C)(4)) (holding that a plaintiff that received a Notice of Dismissal had 90 days to file a lawsuit, but plaintiff's lawsuit was four months late and hereby dismissed); *Brandenburg v. Earl L. Henderson Trucking, Co.,* No. 09–0558–DRH, 2010 WL 2219603 at *4 (S.D. Ill. June 2, 2010) (same). Defendant's argument that Laurie failed to exhaust administrative remedies because a Notice of Dismissal is not a right-to-sue letter does not defeat Laurie's IHRA claims.

However, Laurie received the IDHR letter on August 2, 2016, but she had prematurely filed her lawsuit on May 23, 2016. (Doc. 1-1). Although an overwhelming majority of Illinois courts agree that a lawsuit filed after the 90 day window after receiving an IDHR determination is properly dismissed as untimely, the difficult issue here is the fact that the complainant filed her lawsuit too early. *Moultrie*, 2012 WL 3113914 at *2; *Brandenburg*, 2010 WL 2219603 at *4; *O'Connell v. Cont'l Elec. Const. Co.*, No. 11 C 2291, 2011 WL 4915464 at * (N.D. Ill. Oct. 17, 2011); *Robinson v. Human Rights Comm'n,* 559 N.E.2d 229, 233 (Ill. App. Ct. 1990). Also, withdrawing a complaint from the IDHR before the department makes a determination and filing a lawsuit clearly constitutes a failure to exhaust administrative procedures. *See Anderson v. Ctrs. for New Horizons, Inc.,* 891 F.Supp.2d 956, 960 (N.D. Ill. 2012); *Slaughter v. Weber*, 570 F.Supp.2d 1054, 1057–58 (S.D. Ill. 2008); *Shah v. Inter–Cont'l Hotel Chicago Operating Corp.,* 314 F.3d 278, 282 (7th Cir. 2002). However, once again, the more difficult issue is where, as here, a complainant files a lawsuit too early.

Several Illinois cases suggest that either filing too early or too late demands dismissal of IHRA claims. *See Muller v. Morgan*, No. 12 C 1815, 2013 WL 2422737 at *5 (N.D. Ill. June 3, 2013); *O'Connell*, 2011 WL 4916464 at *12; *McCarrell v. Wirtz Beverage Ill., LLC*, No. 10 C 1530, 2010 WL 3548004 at *2 (N.D. Ill. Sept. 7, 2010) (citing *Davis v. Human Rights Comm'n,* 676 N.E.2d 315, 322–24 (Ill. App. Ct. 1997)); *see also Castaneda v. Ill. Human Rights Comm'n,* 175 Ill.App.3d 1085, 1087–88 (Ill. App. Ct. 1988) ("The exhaustion requirement,

however, cannot be avoided simply because relief may be, or even probably will be, denied by the agency."). However, the aforementioned case law, although persuasive, is not binding on this court. There is no definitive ruling that states that IHRA claims must be dismissed due to premature filing. Because Laurie received the IDHR's Notice of Dismissal and filed her lawsuit within the 90 day window, her complaint satisfies the exhaustion requirement of the IHRA at the pleading stage. For the sake of judicial efficiency, the Court finds it appropriate to forgo dismissal without prejudice given that Laurie has since received IDHR's Notice of Dismissal. Dismissal of her complaint due to premature filing—only to turn around and allow Laurie to file a timely amended complaint— would not aid judicial efficiency, conservation of resources, or the swift resolution of this litigation.

### B. Count V: Common Law Retaliation

#### 1. Legal Standard

Traditionally, at-will employees can be terminated with or without cause. However, the Illinois Supreme Court created the tort of retaliatory discharge as an exception to the at-will employment doctrine. See *Kelsay v. Motorola, Inc.,* 384 N.E.2d 353, 357–59 (Ill. 1978); *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 305 (7th Cir. 1996). In order to succeed with a common law retaliatory discharge claim, the plaintiff must show that she has been "(1) discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy." *Turner v. Memorial Med. Ctr.*, 233 Ill.2d 494 (Ill. 2009); see also *McCoy*

*v. Maytag Corp.*, 495 F.3d 515, 520–21 (7th Cir. 2007). The last prong is the most difficult to satisfy, as the Illinois Supreme Court commented, the "Achilles heel of the principle lies in the definition of public policy." *Belline v. K-Mart Corp.,* 940 F.2d 184 (7th Cir. 1991) (citing *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981)). Illinois courts have struggled to define a "clear mandate of public policy," The *Palmateer* court stated that "public policy concerns what is right and just and what affects the citizens of the State collectively.... [A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Id.* at 421 N.E.2d at 878–79. Therefore, Illinois does not recognize retaliatory discharge for private or individual grievances. *Chicago Commons Ass'n v. Hancock,* 804 N.E.2d 703, 706 (Ill. App. Ct. 2004). Because the cause of action requires a *clear* mandate of public policy, "a broad, general statement of policy is inadequate to justify finding an exception to the general rule of at-will employment." *Turner*, 233 Ill.2d at 502. Courts look for specific, clear mandates of public policy "in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Thakkar v. Station Operators Inc.,* 697 F.Supp.2d 908, 929 (N.D. Ill. 2010) (quoting *Turner*, 233 Ill.2d at 500). However, public policy must strike at the heart of a citizen's rights, duties, or health, so "simply citing a constitutional or statutory provision in the complaint is not enough." *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, (7th Cir. 1992) (citing *Barr v. Kelso-Burnett*, 478 N.E.2d 1354, 1357 (Ill. 1985)) (ruling that the federal,

financially oriented Community Reinvestment Act did not state a clear mandated Illinois public policy).

Although the retaliatory discharge public policy definition is a narrow and limited exception, *Hillmann v. City of Chicago*, 834 F.3d 787, 793 (7th Cir. 2016), Illinois courts have decided that the standard is met when: (1) an employee is fired for asserting a workers' compensation claim, *Kelsay,* 384 N.E.2d at 357–59; (2) an employee is fired for refusing to engage in illegal conduct or reporting the illegal conduct of others, *Palmateer,* 421 N.E.2d at 879; or (3) an employee is fired for protecting the health or safety of the public, *Gaines v. K-Five Constr. Corp.,* 742 F.3d 256, 269–70 (7th Cir. 2014) (citing *Wheeler v. Caterpillar Tractor Co.,* 108 Ill.2d 502 (Ill. 1985)).

Here, Laurie claims that she was discharged in retaliation for reporting illegal activities of the Center's employees to her supervisors and for reporting work-related injuries to her supervisors (Doc. 1-1, pg. 10–11). There is no dispute that Laurie was discharged, but the parties disagree on whether Laurie was discharged in retaliation for her reports and if that discharge violates a clear mandate of public policy. Defendants only challenge the validity of Laurie's work-related injuries claim under the retaliatory discharge doctrine.

**2. Analysis**

   a. Reporting Work-Related Injuries

As stated above, Illinois courts generally recognize the assertion of worker's compensation claims as a protected activity under common law

retaliatory discharge. *Beatty v. Olin Corp.*, 693 F.3d 750, 753 (7th Cir. 2012) ("The Illinois Supreme Court has recognized a common-law cause of action for retaliatory discharge where an employee is terminated because of his actual or *anticipated* exercise of workers' compensation rights.") (emphasis added). Retaliatory discharge is a narrow exception so the reporting of work-related injuries can only be evaluated under the Illinois Worker's Compensation Act ("IWCA"). *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 881 (Ill. 1994) (stating that the Illinois Supreme Court is disinclined to expand retaliatory discharge exceptions). Defendants claim that because Laurie did not specifically cite the IWCA in her complaint, the claim must fail (Doc. 11, pg. 5–6). But when evaluating a motion to dismiss, the Court will construe the complaint liberally in favor of the plaintiff. *Sweat v. Peabody Coal Co.,* 94 F.3d 301, 305 (7th Cir. 1996). Accordingly, Laurie's allegation that she "reported work-related injuries to her supervisors" will be evaluated under the IWCA retaliatory discharge standard.

In order to succeed with a retaliatory discharge claim based on a violation of the IWCA, Laurie will ultimately have to prove three elements: (1) she was employed by the Center at the time of her injury; (2) she exercised a right granted by the IWCA; and (3) her discharge was causally related to the exercise of her rights under the IWCA. *Hillmann*, 834 F.3d at 794. At the motion to dismiss stage, she need not prove those claims outright in her complaint; the claim will survive if she stated enough facts to give the defendant notice of the claim "and the grounds upon which it rests and, through h[er] allegations, show that it is

plausible, rather than merely speculative, that [s]he is entitled to relief." *Tamayo,* 526 F.3d at 1083 (7th Cir. 2008).

There is no dispute that Laurie was an employee of the Center prior to her termination. Additionally, the ability to report a work-related injury to the employer is a right guaranteed by the IWCA. 820 ILCS 305 § 6(c). Illinois courts have identified three main methods showing that an employee exercised his or her right under the IWCA: an employee (1) filed a workers' compensation claim; (2) informed the employer that he or she intends to file a workers' compensation claim; or (3) requested or sought medical treatment for the work-related injury. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012). Laurie's complaint does not state that she filed a workers' compensation claim or that she sought medical attention for her injuries, so this element may only be satisfied if she stated enough facts to demonstrate the second method.

Although Laurie did not file a workers' compensation claim, "Illinois courts recognize that the limited tort of retaliatory discharge may apply where a plaintiff is preemptively fired to prevent such a filing." *Id.* Illinois state courts agree with the Seventh Circuit in that a retaliatory discharge claim can be brought if an employee was fired in *anticipation* of filing a workers' compensation claim. *See Richardson v. Ill. Bell Tel. Co.*, 510 N.E.2d 134, 137 (Ill. App. Ct. 1987) (citing *Horton v. Miller Chem. Co.*, 776 F.2d 1351, 1355 (7th Cir. 1985), *cert. denied* (1986)) ("in reviewing a jury verdict, the United States Court of Appeals for the Seventh Circuit recognized the extension of the tort to an employee discharged

in anticipation of his exercising his rights."); *Fuentes v. Lear Siegler, Inc.*, 529 N.E.2d 40, 42 (Ill. App. Ct. 1988) (same); *Planell v. Whitehall North, LLC.*, 2015 IL App. (1st) 140799 at *1 (Ill. App. Ct. 2015) (same).

As the Seventh Circuit stated, "[f]actual support that the employer was informed or in some way found out about the plaintiff's intent to pursue relief under the Act is essential to a retaliatory discharge action." *Roger v. Yellow Freight Sys., Inc.,* 21 F.3d 146, 150 (7th Cir. 1994). Retaliatory discharge claims often fail under the second method of showing an exercise of a right under the IWCA because the employer is unaware of the employee's injury or possible intent to file a workers' compensation claim. *See Gordon*, 674 F.3d at 773 (holding that Gordon did not qualify under this theory because "at the time FedEx made the decision to terminate Gordon, no one knew the extent of her injuries and Gordon expected to be back to work within a day or two."); *Sweat,* 94 F.3d at 305 ("There is no evidence in the record that Peabody knew or even suspected that Sweat might file a workers' compensation claim"); *Beatty*, 693 F.3d at 753 ("No witness says that Moore talked with the medical department, DeProw, Kern, or anyone else who knew of Beatty's injury; nor is there any other evidence tending to suggest that Moore was aware of Beatty's medical status when he issued the termination order."). Here, Laurie alleges that she did inform her employer that she had sustained work-related injuries (Doc. 1-1, pg. 11). Because she was terminated after the Center obtained this knowledge, an inference can be made that the Center fired her in order to prevent her from filing a workers'

compensation claim. *See Richardson*, 510 N.E. at 515 ("A reasonable inference from these facts is that defendant feared plaintiff would file a claim for additional benefits for a long disability, and terminated him to prevent him from doing so. While other inferences are also possible, we must view the complaint in the light most favorable to the plaintiff."); see also *Cannella v. Cordell Enter.*, 980 F.Supp. 272, 275 (N.D. Ill. 1997) (holding that the plaintiff's statement that defendant "discharged plaintiff because plaintiff … planned to file a claim for workers' compensation" alleged enough facts to establish that an employee exercised a right under the IWCA because "[s]ince we are at the claim alleging rather than the claim proving stage, it is unnecessary to consider whether plaintiff will be able to survive a motion for summary judgment or prevail at trial on this claim.").

The critical question is whether the complaint sufficiently pled facts setting forth the causal connection between the reporting of work-related injuries and her termination to withstand the motion to dismiss standard. The causation requirement ultimately rests on the employer's motive in discharging the employee. *Hillmann*, 834 F.3d at 794 (citing *Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998)). Therefore, "the element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Dotson v. BRP*, 520 F.3d 703, 707 (7th Cir. 2008) (quoting *Hartlein v. Ill. Power Co.,* 601 N.E.2d 720, 728 (Ill. 1992)) (holding that discharge for excessive absenteeism is valid even if the absence is due to work-related injuries); *See e.g. Phillips v. Cont'l Tire the Americas*, 743 F.3d 475, 477–78 (7th Cir. 2014) (ruling

that Continental Tire's drug testing policy complies with the IWCA and does not deter employees from exercising their rights under the Act). To demonstrate an unlawful motive, it is crucial to show that the relevant staff member responsible for the employee's termination knew of the report or potential of a future workers' compensation claim. *Hunt v. DaVita, Inc.,* 680 F.3d 775, 779 (7th Cir. 2012) (citing *Hiatt v. Rockwell Int'l Corp.,* 26 F.3d 761, 769 n.7 (7th Cir. 1994)) ("Evidence that those responsible for an employee's termination knew that he intended to file, or, as in this case had filed, a workers' compensation claim is essential to a retaliatory discharge action under Illinois law.").

At this time in the proceedings, Laurie has provided enough facts, if viewed in a light most favorable to the complainant and taken as true, that she was fired in retaliation for reporting illegal activities and work-related injuries to her supervisors. Although Laurie does not state if the person responsible for her termination knew of the report provided to her supervisors, she does allege that she reported her injuries to her supervisors and then was subsequently fired. (Doc. 1-1, pg. 11-12). The complaint states that Custer was Laurie's supervisor and Custer terminated Laurie on May 23, 2014 for poor performance and insubordination after receiving Laurie's reports of alleged illegal activities and her work-related injuries (Doc. 1-1). Because Custer was Laurie's supervisor and Laurie claims that she reported her injuries to her supervisors, it is safe to infer that Custer was aware of Laurie's work-related injury report at the time of her termination. Furthermore, Illinois courts have held that suspicious timing and

ambiguous statements support an inference of retaliation. *Casna v. City of Loves Park,* 574 F.3d 420, 427 (7th Cir. 2009); *Ramey v. Am. Coal Co.*, No. 12–cv–01236–DRH–PMF, 2013 WL 1932677 at *2 (S.D. Ill. May 8, 2013) ("Circumstantial evidence can include: (1) suspicious timing, ambiguous statements, etc., (2) evidence that similarly situated employees were treated differently, or (3) evidence that the employee was qualified and passed over for the job and the employer's reason for the difference in treatment is a pretext for retaliation."); *See also Thakkar*, 697 F.Supp.2d at 930 ("The timing of Vasant's dismissal, coming immediately on the heels of his second complaint against Bissias, bolsters his retaliatory discharge claim."). Accordingly, the motion to dismiss as to Laurie's retaliatory discharge claim is denied.

## V.   Conclusion

For the reasons stated above, the Court **DENIES** defendant's motion to dismiss (Doc. 10).

**IT IS SO ORDERED.**

Signed this 22nd day of March, 2017.

Digitally signed by
Judge David R. Herndon
Date: 2017.03.22
16:20:43 -05'00'

**United States District Judge**